UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TYRA STEIN, Personal Representative and
Independent Administrator of the Estate of
JACK CARTER, deceased,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 21-cv-544-JPG

**MEMORANDUM AND ORDER**

    This matter comes before the Court on the motion to dismiss filed by defendants Hugh K. Lancaster, Jr. and Nikhil Bhatt (Doc. 13). They filed this motion before the Court substituted the United States as the proper defendant pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2), and dismissed the individual defendants. The Court considers the motion to be on behalf of, and now filed by, the United States. Plaintiff Tyra Stein has responded to the motion (Doc. 16).

**I.    Background**

    This case involves allegations of medical malpractice committed by Drs. Lancaster and Bhatt at the Marion Veterans Affairs ("VA") Medical Center in Marion, Illinois. The malpractice claims allege a failure to diagnose melanoma in 2016 and a premature release from the hospital 2018, which are alleged to have caused the death of the plaintiff's decedent, her father Jack Carter.

    The plaintiff first brought suit in May 2020 when she filed a state court action for medical malpractice in the Circuit Court for the First Judicial Circuit, Williamson County, Illinois (Case No. 2020L66) against Lancaster and Bhatt. At that point, the plaintiff did not know whether the defendants were federal VA employees acting within the scope of their employment such that her exclusive remedy would be under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.

§§ 1346(b) & 2671-2680.  Nevertheless, she had filed an FTCA administrative claim in case they were and had filed the state court action within the state statute of limitations in case they were not.

On July 16, 2020, the plaintiff voluntarily dismissed her state court action to allow time to complete the administrative tort claim process.  The plaintiff was attempting to gain the benefit of an Illinois law which, in some circumstances, effectively gives the plaintiff an additional year to refile her lawsuit.  *See* 735 ILCS 5/13-217.  On August 6, 2020, not having received notice of the state court dismissal, the United States of America removed the state case to federal court, certified that Lancaster and Bhatt were VA employees acting within the scope of their employment at the time of the alleged malpractice, and asked to be substituted as the defendant, all pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2).  After the Court allowed the substitution, the United States learned that the case had no longer been pending in the state court at the time of removal and, jointly with the plaintiff, asked the Court to remand the case.  The Court did so.

The plaintiff did not receive a decision on her administrative tort claim within six months of making the claim, which allowed her to deem it denied.  *See* 28 U.S.C. § 2675(a).  Still uncertain whether Lancaster and Bhatt were, in fact, federal employees acting within the scope of their federal employment as asserted in the original state court suit, on May 11, 2021, the plaintiff again filed a state court suit against them individually (Case No. 2021L59).  Again, the United States removed the case under the Westfall Act and 28 U.S.C. § 1442, certified that Lancaster and Bhatt were federal employees acting within the scope of their employment, and asked to be substituted.  Less than 30 days after filing the notice of removal, the United States asked the Court to dismiss this case under the doctrine of derivative jurisdiction.  The plaintiff objects, arguing that the doctrine does not apply to bar cases removed under the Westfall Act.

2

## II.     Standard for Dismissal

The doctrine of derivative jurisdiction "provides that a federal court acquires no jurisdiction upon removal where the state court lacked jurisdiction over the subject matter or the parties." *Rodas v. Seidlin*, 656 F.3d 610, 612 (7th Cir. 2011); *accord Ricci v. Salzman*, 976 F.3d 768, 771 (7th Cir.) (citing *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981)), *reh'g and reh'g en banc denied*, 2020 U.S. App. LEXIS 37437 (7th Cir. Nov. 30, 2020); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 316 (7th Cir.1994).  This is because, in essence, the jurisdiction of the federal court derives from the jurisdiction of the state court from which the case was removed.  *Rodas*, 656 F.3d at 615; *Edwards*, 43 F.3d at 316.  So under the strict application of that doctrine, if a state court does not have jurisdiction over the case, neither does a federal court to which it is removed, even if that federal court would have had original jurisdiction had the case been initially filed there.  *Rodas*, 656 F.3d at 615; *Edwards*, 43 F.3d at 316.  "The doctrine provides a background rule against which all of the removal statutes operate; it applies unless abrogated."  *Rodas*, 656 F.3d at 618; *accord Ricci*, 976 F.3d at 771.

Congress expressly abrogated the doctrine of derivative jurisdiction for cases removed under the general removal statute, 28 U.S.C. § 1441—that is, cases over which the federal court has original jurisdiction.  *See* 28 U.S.C. § 1441(f); *Ricci*, 976 F.3d at 772.  Therefore, a federal court has jurisdiction over a case removed under § 1441 even if the state court from which it came did not.  Congress has not, however, expressly abrogated the doctrine of derivative jurisdiction for cases removed under 28 U.S.C. § 1442—that is, cases against the United States, federal officers, or federal agencies—or any other removal statute.  *Ricci*, 976 F.3d at 772; *Rodas*, 656 F.3d at 618.

Despite the presence of the word "jurisdiction" in its name, the doctrine of derivative jurisdiction is a procedural one about a defect in the removal process that does not impact a

court's subject matter jurisdiction. *Rodas*, 656 F.3d at 622; *see Ricci*, 976 F.3d at 771. And being a procedural rule, it is subject to the principles of *Grubbs v. Gen. Elec. Credit Corp.,* 405 U.S. 699, 700 (1972), that a procedural defect can be waived or forfeited if not raised before a ruling on the merits. *Ricci*, 976 F.3d at 772. Once a case has been decided on the merits, the doctrine of derivative jurisdiction will not disturb that decision. *Id.* However, the Court of Appeals for the Seventh Circuit has held that, since it is a procedural objection to removal, it must be raised within 30 days of removal. *Id.* at 773-74; *see* 28 U.S.C. § 1447(c). And if it is timely raised and found to apply, the Court must dismiss the case without prejudice even if the plaintiff amends its pleading to attempt to cure any defect. *Id.*

Because the doctrine of derivative jurisdiction does not involve the Court's subject matter jurisdiction, this motion is properly considered under Federal Rule of Civil Procedure 12(b)(6) rather than 12(b)(1). Under Rule 12(b)(6), a plaintiff must allege facts sufficient to plausibly suggest a right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard, however, will not prevent dismissal of a complaint that pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *see Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (dismissal appropriate when party pleads facts establishing defense to his claim). The United States claims that the plaintiff's allegations show the doctrine of derivative jurisdiction requires dismissal.

**III.    Analysis**

The United States removed this case under Westfall Act, 28 U.S.C. § 2679(d)(2), and the

federal officer removal statute, 28 U.S.C. § 1442.  The law is clear that the doctrine of derivative jurisdiction applies to removals under the federal officer removal statute, 28 U.S.C. § 1442, and in the absence of any indication from Congress otherwise, it also applies to removals under the Westfall Act.  So the real questions here is whether the doctrine requires dismissal of this case.

Congress enacted the Westfall Act in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), which declined to give official absolute immunity to federal government employees for torts committed within the scope of their federal employment. *Sullivan v. United States*, 21 F.3d 198, 199 n.2 (7th Cir. 1994).  The Westfall Act legislates such absolute immunity for common law tort claims against a federal employee.  The Supreme Court has described the essential features of the Westfall Act:

> The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties.  See 28 U.S.C. § 2679(b)(1).  When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." § 2679(d)(1), (2).  Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee.  The litigation is thereafter governed by the Federal Tort Claims Act (FTCA), 60 Stat. 842.  If the action commenced in state court, the case is to be removed to a federal district court, and the certification remains "conclusiv[e] ... for purposes of removal."  § 2679(d)(2).

*Osborn v. Haley*, 549 U.S. 225, 229-30 (2007).

Importantly, Westfall Act immunity is not self-executing, that is, a federal employee does not receive absolute immunity from torts committed within the scope of his employment *until* the "scope of employment" certification is made.  *Swallers v. Arvin*, No. 1:17-cv-4505-SEB-DML, 2018 WL 4593399, at *1 (S.D. Ind. Sept. 25, 2018) ("The United States is a sovereign and enjoys sovereign immunity; [the federal employee] personally is not and does not.").  Nor is the case governed by the FTCA until such a certification is made and the United States is substituted

5

as the defendant. *Osborn*, 549 U.S. at 230 (noting that upon the certification, the case is "thereafter" governed by the FTCA). And if that certification proves to be erroneous, a federal court cannot remand the case but can resubstitute the individual defendants and continue to hear the case, even if not under the FTCA. *Id.* at 242.

Thus, the "scope of employment" certification is a turning point—the event that effectively turns a run-of-the-mill common law tort claim against an individual into a permanently removed case against the United States. *See id.* at 243 ("Section 2679(d)(2) is operative *when the Attorney General certifies scope of employment*, triggering removal of the case to a federal forum." (emphasis added)). Until certification, "there is nothing in the Westfall Act or FTCA that removes subject matter jurisdiction from the state court. Before the certification issues, the suit is simply an action against individuals . . . in their personal capacity." *Katz v. Spiniello Cos.*, No. 16-11380, 2016 WL 7209662, at *3 (D. Mass. Dec. 12, 2016).

So while this case was in the state court as a group of state law medical malpractice claims against two doctors in their individual capacities, the state court had subject matter jurisdiction over the lawsuit. Only when the United States removed the case and filed a "scope of employment" certificate did the case transform from a run-of-the-mill medical malpractice case to an FTCA case against the United States. That transformation occurred *after*—or possibly simultaneously with—the removal when the certification was filed in federal court. In any case, it was certainly not *before* the removal. Because the state court had subject matter jurisdiction before the removal, the doctrine of derivative jurisdiction does not call for dismissal of this case in this forum.

This case is distinguishable from *Rodas v. Seidlin*, 656 F.3d 610 (7th Cir. 2011), which was removed by the United State *after* the plaintiff amended her complaint to name the United States as a defendant *in the state court*. *Rodas* began as a run-of-the-mill state law medical

6

malpractice case that included a claim against an individual doctor deemed to be a federal employee. *Id.* at 613. The United States removed the action under the Westfall Act and was substituted as a defendant, and the Court remanded the other claims in the case to state court. *Id.* After the plaintiff learned that the doctor was deemed a federal employee, she voluntarily dismissed her FTCA claim against the United States without prejudice in order to pursue an administrative tort remedy. *Id.*

After her claim was denied, instead of filing suit against the United States in federal court, she amended her state court complaint to add the United States as a defendant. *Id.* at 614. The United States removed the case on the basis of federal officer jurisdiction, 28 U.S.C. § 1442, and brought along with it all the other claims on the basis of supplemental jurisdiction, 28 U.S.C. § 1367(a). Years later, the District Court entered a Rule 54(b) judgment on the state law claims against the non-federal defendants. On appeal, the United States as *amicus curiae* invoked the doctrine of derivative jurisdiction to argue that the District Court lacked subject matter jurisdiction. *Id.* The Court of Appeals essentially agreed that the doctrine would have required dismissal had it been asserted in a timely manner because, as a result of sovereign immunity, the state court undoubtedly lacked jurisdiction over the United States. *See id.* at 619. However, it was too late to raise it after entry of judgment when it did not affect the court's subject matter jurisdiction at the time it entered judgment. *Id.* at 625; *see, generally, Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699 (1972); *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996).

The *Rodas* court's conclusion that the state court lacked jurisdiction over the United States is a "no brainer" because the United States was actually named as a defendant in the state case *before removal* and then removed the case under 28 U.S.C. § 1442. But in the case at bar, the United States did not become a defendant until the case made it to federal court under the Westfall Act. At all times *in the state court*, that court had subject matter jurisdiction over the

7

state medical malpractice claims against Lancaster and Bhatt. Thus, the doctrine of derivative jurisdiction does not require dismissal.[1]

The Court observes that this is consistent with the purposes of the FTCA and the Westfall Act. One of the purposes of the FTCA was "to avoid injustice to those having meritorious claims hitherto barred by sovereign immunity." *United States v. Muniz*, 374 U.S. 150, 154 (1963); *see Millbrook v. United States*, 569 U.S. 50, 52 (2013) ("The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort." (internal quotations omitted)). The core purpose of the Westfall Act was "to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders." *Osborn*, 549 U.S. at 252. The thought was that if doctors serving underserved populations did not have this financial burden, they could devote their resources to patient care instead. *Rodas*, 656 F.3d at 613 (citing H.R. Rep. No. 104–398, at 6, 1995 U.S.C.C.A.N. 767 (1995)). Together, the FTCA and the Westfall Act evince a purpose of shifting the costs and burdens of defending lawsuits away from federal employee doctors to the United States while still allowing tort victims to recover for their injuries.

Were the Court to accept the United States' position, the United States could avoid *all* liability in removed FTCA claims by timely invoking the doctrine of derivative jurisdiction in every case removed under the Westfall Act. Under its view, no tort suit begun in state court against an individual could survive removal under the Westfall Act, for in every one of those cases, the state court would not have had subject matter jurisdiction over what turned out to be an FTCA claim. *See Katz*, 2016 U.S. Dist. LEXIS 171374, at *13. This is inconsistent with

---

[1] The United States suggests the plaintiff was at fault for naming the individual doctors in her second suit after learning of the "scope of employment" certification in the first. The relevant fact, though, is that she did *not* name the United States but individuals over which the state court had jurisdiction *until* the "scope of employment" certification in this case. Had the plaintiff named the United States *in the state court suit*, she would be following the path tread by *Rodas*.

8

Congress's clear desire to provide just compensation—in a federal forum—for those injured by the negligence of federal employees.  Furthermore, under the United States' position, a plaintiff who is unsure of whether a defendant is a federal employee acting within the scope of federal employment must file two lawsuits—one in state court in case they were not, and one in federal court in case they were.  This would result in duplicative lawsuits wasting valuable judicial resources at the state and federal level, a result which Congress was unlikely to have intended.

## IV.   Conclusion

For the foregoing reasons, the Court **DENIES** the United States' motion to dismiss (Doc. 13).

The Court further **DENIES** the plaintiff's motion for leave to amend her complaint (Doc. 17) because she has not named the proper defendant in her proposed pleading, the United States, and has not underlined new material as required by Local Rule 15.1.  The Court **ORDERS** that the plaintiff shall have seven days from entry of this order to file a new motion for leave to amend her pleading and to tender an amended pleading that does not suffer from these defects.

**IT IS SO ORDERED.**
**DATED:  October 20, 2021**

                                                                s/ J. Phil Gilbert
                                                                **J. PHIL GILBERT**
                                                                **DISTRICT JUDGE**